[No. B018137. Second Dist., Div. Four. Apr. 21, 1986.]

LEYDON NELSON SHEPHARD, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Mark Kaiserman and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

No appearance for Respondent and Real Party in Interest.

## OPINION

**WOODS, P. J.**—This petition for writ of mandate presents the question whether defense counsel who declares a doubt as to defendant's mental competence to stand trial and who intends, in the perceived best interests of his client, to argue such incompetence at the Penal Code section 1368[1] hearing, may be relieved by the trial court because defendant desires his counsel to argue for competence and present only evidence supporting that position.

The material facts are simple and not in dispute.

In April and early May 1984 two informations were filed against defendant charging commission of various robberies in March 1984. Defendant appeared and entered a plea of not guilty.

On May 9, 1984, defendant's counsel, the public defender, declared a doubt as to defendant's mental competence to stand trial, as provided in section 1367. Judge Robert Roberson, Jr., declared a doubt and hearing thereon was set for May 22. Defense counsel stipulated that the competency issue be submitted for determination by the court on the basis of a report previously prepared by Neena Sachinvala, M.D., a forensic psychiatrist.

On May 22, 1984, Judge Roberson found defendant incompetent to assist his counsel at trial in a rational manner. Criminal proceedings were adjourned and defendant was ordered to the state hospital.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

On September 11, 1984, defendant was returned to court upon a state hospital certification of competence and criminal proceedings were resumed.

However, on December 6, 1984, Judge Roberson again found defendant incompetent under section 1368. Criminal proceedings were again adjourned, and defendant was transferred back to state hospital.

On July 5, 1985, Patton State Hospital recertified defendant as being competent. The hospital's summary report diagnosed paranoid schizophrenia and an antisocial personality disorder, but found a recovery from defendant's inability to comprehend the nature of the legal charges against him and his inability to assist his counsel.

On September 9, 1985, Judge Turner ordered defendant returned to court for resumed criminal proceedings.

On October 9, 1985, Judge Turner reviewed the hospital report and determined that defendant was then competent to stand trial. Criminal proceedings were resumed and continued to October 16 for trial setting.

At the October 16 proceedings, defense counsel declared a doubt as to defendant's competence to stand trial. This declaration was supported by counsel's representation of his personal observation of defendant's conduct: "When I went to see Mr. Shephard today back in the lock-up, he was totally non-communicative." Counsel also related that jail authorities had reported that defendant had been "acting out" since October 9. The court's bailiff added that when he called defendant's name that morning at the jail, defendant did not respond and would not talk. The bailiff observed defendant make a "threatening gesture to his defense counsel" as defendant was brought into the courtroom. Also, defendant's mannerisms and the state of his clothing were remarked upon as suggesting a lack of mental competence. Counsel requested the court to reappoint Doctors Abe and Sachinvala to examine defendant and to submit current reports as to his competence. Judge Turner then declared a doubt as to defendant's competence to stand trial and ordered that defendant's mental competence be "determined in a hearing to be held pursuant to Penal Code sections 1368.1 and 1369. The doctors who have previously been appointed will be re-appointed." The matter was continued to November 14 for trial setting and lodging of the psychiatric reports. The matter was later continued to December 6.

On December 6 only the report of psychiatrist Neena Sachinvala. M.D.. was available. It diagnosed defendant as being "presently unable to understand the nature and purpose of the proceedings taken against him" and as

"presently unable to cooperate in a rational manner with counsel in presenting a defense." It concluded that defendant was "presently severely mentally ill" and "in need of intensive psychiatric treatment in a hospital." The report was based upon a 25-minute personal interview with defendant in his jail cell on October 23 and information from jail officials concerning defendant's recent aberrant behavior.

Specifically, the report states: "On evaluation at the cell, defendant was observed to be naked except for wearing his underwear. He was on his hands and knees staring into space and remained in that posture until I introduced myself and tried to get his attention. He looked at me momentarily, raised his arms and then held onto the bars, again staring into space and remained in that posture for 15 minutes. During this period he was nonresponsive."

The report relates that a jail officer told Dr. Sachinvala that defendant had not been brought down to an interview room for her because he "had been sitting naked in his cell in a crouched posture and became combative when he was approached to get dressed." Dr. Sachinvala was told by the mental health counselor at the jail that defendant had been exhibiting the same "bizarre" behavior for two or three days. He had been "decompensating rapidly since his arrival from Patton State Hospital" and was soon going to be transferred to the jail psychiatric unit. Defendant was reportedly observed during the two or three prior days to remain motionless and staring into space for periods of up to one hour, not being distracted by sound or the presence of people. "He remained mute most of the time, although at times he made unintelligible utterances."

Judge Turner apparently read the Sachinvala report. But, upon the advisement by defense counsel that defendant wished to be found competent to stand trial, the court inquired briefly of defendant whether he wanted his public defender to argue for competence. Defendant nodded his head affirmatively. The deputy public defender represented to the court that he was obligated to serve the best interests of his client by advocating his client's present incompetence. He stated his opinion that defendant's present mental state prevented defendant from making a rational determination of what was in his best interests.

The court inquired of defendant whether a conflict existed that required another attorney to represent him. To this defendant responded: "Appoint the People." Asked again, defendant shrugged his shoulders. The court then led defendant into asserting "There's a failure to comply. No mutual agreement."

Defense counsel cited *People* v. *Bolden* (1979) 99 Cal.App.3d 375 [160 Cal.Rptr. 268], to respondent for the proposition that no conflict in interest exists in section 1368 proceedings where defense counsel intends to offer evidence of defendant's competence, pursuant to defendant's desire to be found competent, but intends to also offer evidence of incompetence and argue defendant's incompetence to the jury pursuant to his own perception that a determination of present incompetence would be in defendant's best interests. Respondent then relieved the public defender and appointed private counsel to represent defendant at the competency hearing. The court reasoned that the public defender had no right to argue against his client's mental competence "where there is some evidence of competence." Respondent referred to the July 1985 state hospital report and, apparently, defendant's October 9, 1985, court appearance where he appeared competent to respondent.

I

On these facts, it is manifest that the procedure approved in *People* v. *Bolden, supra,* 99 Cal.App.3d 375, renders respondent court's ruling a clear abuse of discretion.

*Bolden* is the sole reported case involving the question of defense counsel's role in advocating his client's present incompetency to stand trial despite the client's stated desire to be found competent. The facts in *Bolden* are not materially distinguishable from those in our case. There, defense counsel learned that his client suffered from the delusion that the persons he attempted to kill, his father and brother, were really aliens who inhabited the bodies of the victims. Defendant desired to be found competent but avowed the continuing belief that aliens inhabited the bodies of his family members and wanted to kill him. Defense counsel believed that the best interests of his client required presentation of evidence and argument showing present mental incompetence to stand trial. Counsel sought to avoid placing defendant on trial when he could not assist in his own defense in a rational manner. At the section 1368 competency hearing, counsel allowed defendant to testify as to his own present competence, then counsel presented evidence of incompetence.

On appeal from the jury verdict, finding defendant incompetent to stand trial, the *Bolden* court held that effective defense counsel must advocate the position counsel perceives to be in the client's best interests even when that interest conflicts with the client's stated position. *Bolden* reasoned: "When the attorney doubts the present sanity of his client, he may assume his client cannot act in his own best interests and may act even contrary to the express desires of his client (*People* v. *Hill* (1967) 67 Cal.2d

105, 115, fn. 4 [60 Cal.Rptr. 234, 429 P.2d 586].) To do otherwise may cause prejudicial error. (*People* v. *Merkouris* (1956) 46 Cal.2d 540 [297 P.2d 999]).'' (*People* v. *Bolden, supra,* 99 Cal.App.3d at pp. 379-380.)

Thus, *Bolden* squarely addressed and rejected the contention that defense counsel provides ineffective representation by overriding a prima facie incompetent defendant's desire to present only evidence and argument of competence in section 1368 proceedings.[2]

Respondent was advised by defense counsel of the procedure approved in *Bolden,* but respondent, without purporting to distinguish *Bolden,* elected to ignore it as authority. This was a clear abuse of respondent's discretion. Trial courts are bound by the doctrine of stare decisis to follow controlling reported decisions of the appellate courts of this state (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), irrespective of the trial court's subjective belief that such decision is incorrectly decided or its anticipation that appellate courts might extend established rules of law to new areas.

The broad autonomy *Bolden, supra,* recognizes in defense counsel to protect the client's best interests in special proceedings pursuant to section 1368 is well-established in case law. The rationale giving competent defendants ultimate authority over tactical decisions at trial, does not extend to this situation where defense counsel's duty to protect a prima facie mentally incompetent defendant requires contravening that defendant's tactical preferences.

*Bolden, supra,* follows the reasoning of the Supreme Court in *People* v. *Hill* (1967) 67 Cal.2d at page 115, footnote 4 [60 Cal.Rptr. 234, 429 P.2d 586], where it is stated: ''Obviously, where the attorney has doubts as to the present sanity of the defendant he should be able to make decisions as to how the proceedings should be conducted.

''When evidence indicates that the defendant may be insane it should be assumed that he is unable to act in his own best interests. In such circumstances counsel must be free to act even contrary to the express desires of his client. [Citation.] Conducting the trial according to the dictates of a

---

[2]The return's attempt to factually distinguish *Bolden* is wholly unfounded and mischaracterizes the psychiatric and other prima facie evidence of defendant's severe mental illness. For example, the return incorrectly asserts that Dr. Sachinvala's October 24, 1985, report concludes that defendant ''was capable of understanding the nature and purpose of the proceedings.'' This is incorrect. The October 24, 1985, report expressly states the opposite conclusion. The return also invalidly seeks to distinguish *Bolden* upon the claim that defendant Bolden's incompetence was ''manifest'' while defendant Shephard's is not.

defendant who, evidence indicates, may be insane, can result in prejudicial error. [Citation.]"

The critical difference between defense counsel's control over tactical determinations in section 1368 competency proceedings as opposed to guilt phase trial tactics is also pointed out by the Supreme Court in *People* v. *Samuel* (1981) 29 Cal.3d 489 [174 Cal.Rptr. 684, 629 P.2d 485]. In *Samuel,* defense counsel gave an illegally obtained confession by defendant to an appointed expert who was evaluating defendant's competence and later testified for defense counsel at the section 1368 hearing as to defendant's incompetence. The prosecution used the confession upon cross-examination. This conduct by counsel was approved by the Supreme Court, despite acknowledgement that such conduct by defense counsel would be a violation of defendant's privilege against self-incrimination in the context of a criminal guilt trial. The court pointed out the greater latitude allowed defense counsel in section 1368 special proceedings: "First, a section 1368 hearing is held only after there has been a prima facie showing of mental incompetence. Of necessity, therefore, defendant's attorney must play a greater role in making fundamental choices for him, and cannot be expected to seek approval of strategic decisions made in the course of obtaining and presenting proof of incompetence. [Citation.] ■ The privilege against self-incrimination is in certain other circumstances within the control of the accused: his voluntary and intelligent waiver of the privilege must be sought and obtained before a plea of guilt may be accepted [citations], and he is ordinarily entitled to waive the privilege regardless of his attorney's wishes [citation]. ■ But in *Robles* we noted that the accused had been validly adjudged competent before asserting his right to testify over counsel's objection. [Citation.] In so doing, we tacitly recognized the obvious: if counsel represents a defendant as to whose competence the judge has declared a doubt sufficient to require a section 1368 hearing, he should not be compelled to entrust key decisions about fundamental matters to his client's apparently defective judgment. In fact, in *People* v. *Merkouris* (1956) 46 Cal.2d 540, 555 [297 P.2d 999], we held that it was an abuse of discretion for the trial court to allow a defendant whose competence was in question to withdraw a plea of not guilty by reason of insanity, thereby in effect pleading guilty, contrary to the advice of his attorney." (*People* v. *Samuel, supra,* 29 Cal.3d at pp. 495-496.)

Allowing a defendant to compel his counsel to argue competency (and suppress contrary evidence) would, in a manner analogous to the *Merkouris* situation, be increasing the danger of a prima facie incompetent defendant subjecting himself to a guilty verdict at a trial where there is substantial likelihood that he would be unable to assist his counsel in a rational manner.

■ The importance of protecting a defendant from an irrational claim of competence is stated in *People* v. *Samuel, supra,* 29 Cal.3d at page 494, where the Supreme Court points out: "It is a fundamental canon of criminal law, and a foundation of due process, that 'A person cannot be tried or adjudged to punishment while such person is mentally incompetent.' [Citations.]"

■ ■ ■ ■ Respondent referred to several cases in support of its decision to relieve the public defender. These cases involve situations where disagreement between a competent defendant and defense counsel as to a trial tactic or defendant's assertion of a "fundamental constitutional" right (such as to testify at trial) might in certain circumstances require that defendant's desire override the contrary tactical view of counsel.[3] However none of these cases concerns a dispute over whether to advocate competency or incompetency at a section 1368 hearing.

*People* v. *Frierson* (1985) 39 Cal.3d 803 [218 Cal.Rptr. 73, 705 P.2d 396], was cited by respondent for the proposition that defense counsel's authority to make binding tactical decisions is abated where the decision in question is "'of such fundamental importance' . . . that defendant's wishes should have been respected." (39 Cal.3d at p. 814.) However, *Frierson* involved the question whether defense counsel could withhold the presentation of a defense in the guilt phase of a capital case over the expressed objection of his mentally competent client and despite the existence of some credible evidence to support the defense. We do not view the *Frierson* principles as having application here.

Respondent also stated in support of its ruling that it was satisfied that ". . . the circumstances described in People versus Williams, 2 Cal.3d 894 at 905, are present." This refers to language stating that while in most cases disagreement between defendant and counsel as to trial tactics does not preclude effective assistance of counsel requiring appointment of different counsel, disagreement as to the fundamental question of defendant's right to testify at trial could, in certain circumstances, result in rendering counsel ineffective.

---

[3] The specific situations and "fundamental rights" to which case law has conferred ultimate decisionmaking authority to competent defendants are limited to: decisions to testify in own defense at trial (*People* v. *Robles* (1970) 2 Cal.3d 205, 214-215 [85 Cal.Rptr. 166, 466 P.2d 710]); entry of a guilty plea and concurrent waiver of rights to jury trial and right to present and confront witnesses (*In re Tahl* (1969) 1 Cal.3d 122, 131-133 [81 Cal.Rptr. 577, 460 P.2d 449]; *In re Mosley* (1970) 1 Cal.3d 913, 924 [83 Cal.Rptr. 809, 464 P.2d 473], and *People* v. *Holmes* (1960) 54 Cal.2d 442-444 [5 Cal.Rptr. 871, 353 P.2d 583]); and right of a competent defendant to refuse to enter an insanity plea (*People* v. *Gauze* (1975) 15 Cal.3d 709 717 [125 Cal.Rptr. 773, 542 P.2d 1365]).

But, *Williams, supra,* does not involve the question of a defendant's competence to stand trial. Instead, *Williams,* like *Frierson, supra,* concerns a disagreement between a competent defendant and counsel as to whether counsel's decisions concerning trial tactics substantially impair defendant's rights. It was held that the trial court's refusal to appoint different counsel to represent defendant at trial did not constitute prejudicial error because the dispute did not constitute a complete breakdown of counsel's effectiveness.

In the case before us, defendant would continue to have a dispute with any new counsel who attempted to advocate defendant's incompetence to stand trial. The only solution is to find counsel willing to advocate competency, thus leaving no counsel to advocate incompetence to a jury unless the prosecution chooses to do so. (§ 1369, subd. (b)(2).) ██ ██ Not only could this likely produce a distorted view in the minds of the jurors as to the correctness of defendant's claim of competence, but it would undermine the important function of section 1367 et seq., to safeguard an incompetent defendant against an unfair trial, despite his own belief in his competence.

The return to the alternative writ cites *People* v. *Stankewitz* (1982) 32 Cal.3d 80 [184 Cal.Rptr. 611, 648 P.2d 578, 23 A.L.R.4th 476], as authority for removing defense counsel who refuses to follow his client's desire to advocate only competence, in special proceedings under section 1368. This is a mischaracterization of *Stankewitz.*

*Stankewitz* involved a dispute between defense counsel and defendant concerning the appropriate defense theory at trial. Defense counsel desired to put on a defense of not guilty by reason of insanity; defendant chose to challenge the identification. Defense counsel advised the trial court of the dispute and contended that defendant's position was irrational and caused by mental incompetence. A psychiatrist was appointed to examine defendant. The resulting report concluded that defendant suffered from a paranoia, believing that his counsel was conspiring against him. The report concluded that defendant would cooperate with, and accept a trial defense strategy suggested by, "another attorney who was not a public defender" due to the limited focus of defendant's paranoid delusions. (*People* v. *Stankewitz, supra,* 32 Cal.3d at p. 88.)

But, in open court, defendant subsequently repudiated the portion of the psychiatrist's report that stated defendant would follow the advice of different defense counsel. Defendant stated that he would not acquiesce in any defense theory except to deny commission of the charged offense. (32 Cal.3d at p. 89.)

The trial court refused to declare a doubt as to defendant's competence to stand trial and also refused to appoint new counsel. Defendant exhibited irrational behavior at trial and was convicted by the jury upon strong evidence of guilt. Defense counsel had presented an insanity defense.

On appeal, the Supreme Court, in a plurality opinion, held that it was prejudicial error to have refused to conduct a section 1368 competency hearing where a preliminary prima facie showing of defendant's incompetence is made by qualified medical report. The plurality opinion commented in dictum: "In the particular circumstances of this case, a substitution of counsel might have avoided altogether the necessity for ordering a full competency hearing. . . .

"Given Dr. Glenn's belief that these problems might not arise with different counsel, it is conceivable that a substitution of counsel could have alleviated the entire tangle. At least, this was an alternative which the trial court could have tried in hopes of avoiding any need for a full competency hearing." (*People* v. *Stankewitz, supra,* 32 Cal.3d at pp. 93-94.)

Thus, contrary to the claim made in the return to the alternative writ, *Stankewitz* is no authority for removal of defense counsel in section 1368 special proceedings because there exists an attorney/client dispute whether to argue competency or incompetency in those special proceedings. Also contrary to the contention advanced in the return, the prima facie evidence of our defendant's present mental incompetence to stand trial does not include any suggestion that his paranoid delusion is focused exclusively upon the public defender's office.[4] The substitution solution suggested in dictum in *Stankewitz* sought to resolve the dispute by alleviating defendant's irrational position, not by finding new counsel who would advocate that position.

Let a peremptory writ of mandate issue directing respondent to vacate its order of December 6, 1985, relieving the public defender and appointing

---

[4]The return seeks to draw a parallel between *Stankewitz* and the present case by claiming that our defendant's position is caused by a paranoid delusion centered upon the public defender. In this effort, the return incorrectly asserts that Dr. Sachinvala's report of October 24, 1985, refers to defendant's paranoid delusion that there is a public defenders' conspiracy to keep him in mental facilities to "control him." However, defendant's statements as to conspiracy, instead, appear in Dr. Sachinvala's October 8, 1984 report. The October 8, 1984, report states that defendant believes that "*the law enforcement people* were 'out to get him' and wanted him locked up in a mental hospital. In order to accomplish this *they* were using his defense counsel and myself [Dr. Sachinvala] to find him mentally ill through psychiatric evaluations." The reasons defendant purportedly related to Dr. Sachinvala for the persecution by law enforcement authorities are wholly irrational. It is uncontradicted that at present defendant would not follow the advice of any counsel to claim incompetency, and that his paranoia does not focus upon the public defenders' office.

Attorney Howard J. Shopenn as defense counsel, and to thereafter conduct a competency hearing as required by law.

The temporary stay issued by this court on January 2, 1986, shall remain in effect until respondent fully complies with this order.

McClosky, J., and Arguelles, J., concurred.