114 Cal.Rptr.2d 405 (2001)
94 Cal.App.4th 510
The PEOPLE, Plaintiff and Respondent,
v.
Ralph Allen SMITH, Defendant and Appellant.
No. C036886.
Court of Appeal, Third District.
December 12, 2001.
Rehearing Granted January 2, 2002.
*406 Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, John G. McLean, Supervising Deputy Attorney General, for Plaintiff and Respondent.
SIMS, Acting P.J.
In a criminal case pending in San Joaquin County Superior Court, defendant Ralph Allen Smith was represented by the Public Defender when defendant's competence to stand trial was put in issue. The trial court appointed special counsel, in addition to the Public Defender, to represent defendant's "wishes" with respect to whether defendant wanted a jury trial on the issue of his competence. At a hearing, the Public Defender represented to the court that it would be in the defendant's best interests to waive a jury. Special counsel informed the court that defendant wanted a jury.
The trial court ruled that the issue of competence would be tried by the court without a jury, and, following a trial, found that defendant was incompetent to stand trial.
Defendant appeals, contending the trial court erred in refusing to follow his wishes for a jury trial on the issue of his competence.[1]
We shall conclude the trial court correctly relied on the representation of defendant's Public Defender that it was in defendant's best interests to waive a jury. We shall also conclude that, in an ordinary case such as this one, the trial court should not appoint special counsel to represent defendant's "wishes" with respect to whether defendant wants a jury to try the question of his competence.

PROCEDURAL HISTORY
While involuntarily committed at Napa State Hospital under the Lanterman-Petris-Short (LPS) Act, on June 10, 2000, defendant allegedly assaulted a fellow patient. He was charged with elder or dependent adult abuse (Pen.Code, § 368, subd. (b)(1))[2] and battery (§ 242).
Defendant was arraigned on June 13, 2000; the Public Defender was appointed to represent him, and criminal proceedings were suspended to determine his competence to stand trial.
*407 On June 29, 2000, the court, Judge Michael N. Garrigan, presiding, ordered "an appointment of counsel from LRS [Lawyer Referral Service] panel for defendant's wishes." The court referred to this attorney as defendant's "wishes" counsel. This appointment was in addition to defendant's previously appointed Public Defender. The Public Defender was referred to as defendant's "interests" counsel.[3]
On August 28, 2000, before Judge Terrence R. Van Oss, defendant's "interests" counsel waived defendant's right to a jury trial and agreed to submit the matter to the court. Defendant's "wishes" counsel indicated defendant wanted a jury trial. Upon specific questioning by the court, "wishes" counsel indicated the desire for a jury trial was based exclusively on defendant's wishes.
The following colloquy occurred between defendant and
"THE COURT: Okay. Mr. Smith, you look like you have your hand up.
"THE DEFENDANT: First of all, I haveI have outpatient doctor in Palo Alto. One problem is, each time I try to coordinate something with my outpatient doctor, I'm not allowed to make my follow-up appointments.
"I suffered robbery, fourfour, five days before I was arrested. I cited the policeI have suffered a robbery, some violentvariety of violent crimes.
"THE COURT: Committed against you?
"THE DEFENDANT: Committed against me.
"And I cited the Stockton Police Department. I got arrested, I went. And I suffered corporate tax. I was arrested. She was there. I said, `I just want to make note that I was corporately defrauded on file with the police department.' They arrested me.
"Now, I've had my ID stolen. I have a bank card stolen. I had money stolen. This new address, I had money stolen. I had ID stolen. I have cellular phone thing. I'm unable to pay my bills because I nevermy home history I never had a social worker.
"I had a social worker at County Mental Health, I think it was in the first year that I was going there. Never after that year, they just discontinued. The whole time I would go to inpatient whatever, get out. I'm trying to organize my life. I never had a social worker. I had to use my own initiative and get a social worker, to try to talk to a social worker because my check had been stolen and a variety of my items had just been taken away from me.
"So I wanted a jury trial so I can maybe I could, `cause I always call the Stockton Police Department when my bank card is stolen and my California ID is stolen. And the reports of theft, I report that stolen. Always contact them and tell `em it's taken away from where I'm living at. At that time, I call and tell `em it's taken away. So they have my statement. They made me do a crime report thing, you know, with the crime report number.
"And II have several incidents within the past year. I have several incidents where money stolen, bank card. I've been a victim of violent crimes. And my nature is to work, but because of the violent *408 crime, because of this is what the guy in custody.
"Now they have medicine in there, VA, they have lottery winnings, they have rare coinage. Let's see, what else? They have my Lotto winnings. If you seen the Lotto ticket, you know what it's worth, okay. And the coins are worth money.
"Then the medicine is something that they use, they abuse. I neverI never have taken my medicine sold it on the street or thought I was king, whatever, with my medicine, you know. I never did. I used it myself or I don't do anything with it.
"Here I was, I was going to the hospital. I never made my follow-up appointment. I gotta screw up here, then I go back to the hospital and come back with another scrip. So there's two scrips within less than a month and a half. And then I'm on the scrip program in the hospital and then coming back. So it's like withinI say in the past two, three years, two, three years, wasn't get my scrip, my scrip ration per month. You do your follow-up one scrip a month, doctor's orders. Here I am going through twice that amount, you know, normal. And I'm notI'm not recorded like selling, selling themy medicine on the streets anywhere, property anywhere, because it costs too much. I couldn't make I mean, like a idiot, I'm already victimized and then I'm going to go out and subject myself to being ... [sic]
"So the reason why I want a jury trial is because I want a citizen complaint involved. I want victim-witness involved. I want certain hotlines involved, because I had to have certain hotline, contact different service. And they had me on the record and they had me on file. And they'veI've been there and back.
"I'm a veteran anyway, Army. I'm retired veteran, 23 years to this day. I'm in communications department. My shore commander is Rough and Ready Island, my international chain of command is U.S.S. Midway. So I'm handling whatever required to security clearance, you know, like you have classified information, then you have like top secret information, and you have secret information. I had beyond that, right next.
"And this is exaggerate, I don't mean talk about that, but I have where I had to go on spy trial, you know, you know spy trials. And I swoop and try robbery and some other kind of degree. It's a lot I'm been through because of being a vet, you know. I just need that to be the atmosphere, need to be in that environment to kind of relate to it. It's been hard on me.
"She'sshe's beenshe's been there through these times, just ordeal with the veterans and whatever, whatever ordeal, she's been there. There's some things ain't worked out because I ain't had a social worker, and I didn't realize that until the last check was stolen. And it was like I didn't get my check, it was missing. And I didn't steal anything. And every again and again, I wasn'tI wasn't there.
"So this time I stopped to direct deposit. How'd I do that? I don't know. I not worded it right. All I know, I was supposed to get a check and I didn't get it on that date. So I went down there and reported I wanted to help, and I realized at that point I never had a social worker. So here I am where probably inpatient outpatient history, going in the hospital for brief advantage, you know, most I stay maybeI don't know maybe a month tune-up whatever, going through the courses. This I don't know.
"Anyway, brief go somewhere, I stay brief amount of time. What am I trying to say? And never had a social worker. Never. And I don't even have a social worker now.
*409 "I have doctors. I have Dr. Coty I seen. I have Dr. Mooney. Dr. Mooney I see. Dr. Kom I see. I have Dr. Chin I see. I have a variety of medical doctors at Livermore that I see that werelike the day before. Like you have a doctor's report right the day before I was arrested. They had issued me the medicine, send me on this was before I was arrested. She'll tell you, day before I was arrested I had distributed all my medicine to me and sent me home. And this time distribute all the rest. Next day and the last timeit was all the next day I was distributed the medicine they arrested me again. Distribute medicine and send me home.
"The doctorgroup of doctors, I seen three or four doctors. And whatever they doing, they approve some of theirI seen the psychiatrist there, seen the geriatric doctor. I seen I had something wrong with mynot swelling in the brain, but I have where I have excessive mucus membrane, take Benadryl and Dimetapp. And then I take someI take two nasal decongestants. And I take, you know, inhalants. And then I take two oral inhalers. I take a variety of medicine I supposed to be on right now, but I haven't been taking it because of my new county deal.
"THE COURT: Thank you, Mr. Smith. We wanted to hear what you had to say."
In determining the jury trial had been waived, the court stated: "[I]t does appear to me that under these circumstances ... it appears clear from what the California Supreme Court has said that the attorney has the right to waive jury, if the attorney feels that that is in the client's best interest. [¶] Now, I understand that because of the law, the way it's set up, that we have also an attorney here to represent Mr. Smith's wishes. His judgment with respect to that, as he's just said here, is based upon Mr. Smith's wishes and not his best interests. [¶] ... [C]ounsel still remains in control of the case, insofar as counsel has to make a decision as to what is in the client's best interest, and the Court obviously has to choose one of these two points of view in deciding this issue ... I'm going to find that the decision by counsel that it is in Mr. Smith's best interests to submit the matter to the Court for court trial is the one that prevails."
After "interests" counsel agreed to submit the matter to the court based on the medical evaluations, the court agreed to allow defendant to present evidence and testify. Defendant and his mother both testified, asserting defendant was competent. After reviewing the medical reports and "having listened to Mr. Smith yesterday and today" the trial court was convinced "he really is not able to cooperate with his counsel on a rational basis." Accordingly, the court found him incompetent under section 1368.

DISCUSSION
Defendant's appeal rests on the claim that because an attorney asserted his desire for a jury trial to the court, the waiver of that right by defendant's "interests" attorney is not valid. We do not agree with defendant's contention.
Where, in a criminal proceeding, the defendant's competency has been put in issue under section 1368, then section 1369 provides for "A trial by court or jury of the question of mental competence...." (Emphasis added.)
The jury trial right set out in section 1369 is statutory, not constitutional. (People v. Masterson (1994) 8 Cal.4th 965, 969, 35 Cal.Rptr.2d 679, 884 P.2d 136.) Consequently, "[C]ounsel may waive the right to a jury trial in a competency proceeding, and the court need not advise the defendant of that right." (Id. at p. 972, 35 Cal.Rptr.2d 679, 884 P.2d 136.) This is *410 because an attorney "may assume his client cannot act in his own best interests and [that attorney] may act even contrary to the express desires of his client." (People v. Bolden (1979) 99 Cal.App.3d 375, 379-380, 160 Cal.Rptr. 268; see also Shephard v. Superior Court (1986) 180 Cal. App.3d 23, 29, 225 Cal.Rptr. 328.) The rationale behind this rule is, "[allowing a defendant to compel his counsel to argue competency [and suppress contrary evidence] would ... be increasing the danger of a prima facie incompetent defendant subjecting himself to a guilty verdict at a trial where there is substantial likelihood that he would be unable to assist his counsel in a rational manner." (Shephard, supra, 180 Cal.App.3d at p. 30, 225 Cal.Rptr. 328.) Accordingly, once there has been the requisite prima facie showing of incompetence, "defendant's attorney must play a greater role in making fundamental choices for him, and cannot be expected to seek approval of strategic decisions made in the course of obtaining and presenting proof of incompetence." (People v. Samuel (1981) 29 Cal.3d 489, 495, 174 Cal.Rptr. 684, 629 P.2d 485.)
Put another way, an attorney in this circumstance "should not be compelled to entrust key decisions about fundamental matters to his client's apparently defective judgment." (People v. Samuel, supra, 29 Cal.3d 489, 495, 174 Cal.Rptr. 684, 629 P.2d 485.) Further, in competency proceedings, "[t]he same considerations [underlying the rule] that counsel need not entrust key decisions to the client also compel the conclusion that the client may not veto those same decisions. Whether or not the client objects, counsel must be allowed to do what counsel believes is best in determining the client's competence." (People v. Masterson, supra, 8 Cal.4th at pp. 972-973, 35 Cal.Rptr.2d 679, 884 P.2d 136.)
In the context of competency proceedings, the law is both clear and well settled. The attorney must make the decisions he or she feels best represent the client's interests irrespective, and possibly even in spite of, the client's wishes or perception of his interests.
This reasoning compels us to reject defendant's claim that the trial court erred in accepting "interests" counsel's waiver of the right to a jury trial over "wishes" counsel's request for a jury trial. The record in this case makes clear that "wishes" counsel requested a jury trial based exclusively on defendant's wishes, not on his independent assessment of his client's best interests.
Here, "wishes" counsel did nothing more than express to the court defendant's request for a jury trial. The inclusion in competency proceedings of an attorney who exercises no independent judgment regarding his client's interests and merely verbalizes his client's "wishes" in no way affects the reasoning or applicability of Masterson and the other authorities we have discussed. The very language of the Masterson holding leads to this conclusion: "[C]ounsel may waive a jury trial in a proceeding to determine whether a defendant is competent to stand trial on criminal charges, and may make other decisions regarding a jury trial, even over the defendant's objection." (People v. Masterson, supra, 8 Cal.4th at p. 974, 35 Cal.Rptr.2d 679, 884 P.2d 136.) It makes no legal difference whether that objection is articulated to the court by the defendant himself or by an attorney appointed exclusively to convey defendant's "wishes."
The trial court correctly ruled that defendant's competency trial should be conducted by a judge, not a jury.
From the foregoing, it also appears that "wishes" counsel served no salutary purpose *411 in this proceeding, and the trial court erred in appointing "wishes" counsel for defendant.
Defendant relies on People v. Mickle (1991) 54 Cal.3d 140, 181-185, 284 Cal. Rptr. 511, 814 P.2d 290 (Mickle) as support for the proposition that where counsel seeks a finding of incompetence over his client's objection, the proper procedure is for the trial court to appoint a second attorney to represent defendant's "wishes." Mickle does not stand for this proposition, nor have we found any California authority that does.
In Mickle, after the defendant was found guilty of first degree murder but before the penalty phase of the case, defense counsel moved for a competency hearing. (Mickle, supra, 54 Cal.3d at p. 181, 284 Cal.Rptr. 511, 814 P.2d 290.) A second attorney was appointed to represent Mickle in the competency proceedings. The competency attorney called one of the trial attorneys to the stand, as that attorney was the only source of evidence of defendant's incompetence. (Id. at p. 182, 284 Cal.Rptr. 511, 814 P.2d 290.) The trial attorney refused to answer questions regarding his opinion on Mickle's competence unless Mickle personally waived his attorney-client privilege. Mickle was repeatedly asked if he would waive the privilege and, apparently on the somewhat conflicted advice of competency counsel, he would not. (Id. at pp. 181-182, 284 Cal. Rptr. 511, 814 P.2d 290.) The trial court sustained Mickle's assertion of the privilege, the evidence of incompetence did not come in, and the jury found him competent to stand trial. (Id. at p. 182, 284 Cal.Rptr. 511, 814 P.2d 290.) On appeal, Mickle argued the trial court had erroneously sustained his claim of attorney-client privilege, but the Supreme Court held, "[T]he point has not been preserved for appeal." (Id. at p. 184, 284 Cal.Rptr. 511, 814 P.2d 290.)[4]
The issue in Mickle was not whether it was appropriate to appoint separate counsel to represent defendant's wishes and interests. Rather, the issue was whether evidence was erroneously excluded under the attorney-client privilege. (Mickle, supra, 54 Cal.3d at p. 181, 284 Cal.Rptr. 511, 814 P.2d 290.) The fact that there were two attorneys representing Mickle was a circumstance which arose solely by virtue of the fact that his trial attorney was a prospective witness on the issue of Mickle's competency. It was not a case where one attorney articulated defendant's wishes and a separate attorney argued for his best interests. The conflict between Mickle's wishes and interests was articulated to the court by competency counsel alone. (Id. at p. 182, 284 Cal.Rptr. 511, 814 P.2d 290.) In the instant case, the Public Defender did not testify, so that the conflict apparent in Mickle was not present.
It is more likely that the idea of appointing "wishes" counsel in a competency proceeding when there is a conflict between the attorney's estimation of the client's best interests and the client's desires stemmed from People v. Stanley (1995) 10 Cal.4th 764, 42 Cal.Rptr.2d 543, 897 P.2d 481 (Stanley). In Stanley, during the penalty phase of the trial, trial counsel advised the court they thought Stanley might be incompetent to rationally assist in his defense. (Stanley, supra, 10 Cal.4th at pp. 802-803, 42 Cal.Rptr.2d 543, 897 P.2d 481.) Stanley initially objected to the *412 competency hearing, then withdrew his objection. The trial court asked Stanley if he wanted the court to appoint another attorney to represent him in connection with the competency proceedings, and he indicated he did. (Ibid.) Trial counsel presented evidence of defendant's incompetence, and the newly appointed attorney presented evidence of defendant's competence. (Ibid.)
On appeal, Stanley argued the trial court erred in appointing additional counsel on the issue of competence, thereby creating a conflict between his lawyers, which deprived him of due process. (Stanley, supra, 10 Cal.4th at pp. 803-804, 42 Cal.Rptr.2d 543, 897 P.2d 481.) In rejecting this claim, the Supreme Court stated, "In appointing separate counsel to represent defendant's point of view, the trial court acted to resolve a conflict, not create one. In so doing it permitted the jury to hear every side of the issue of defendant's competence, thereby assuring defendant a fair trial. In the circumstances, defendant perhaps got more than he was entitled to." (Id. at pp. 806-807, 42 Cal.Rptr.2d 543, 897 P.2d 481, emphasis added.) There is nothing in Stanley that suggests, let alone holds, that appointment of separate "wishes" counsel was the proper procedure. Stanley simply holds that such a procedure did not violate defendant's due process rights.
The appointment of "wishes" counsel in this case was improvident. The appointment of "wishes" counsel created needless confusion and did nothing to advance defendant's interests or protect his rights. An attorney appointed to represent a defendant's best interests can communicate to the court the simple fact of a defendant's desire for a jury trial. And, as this case well illustrates, in most cases the trial court is perfectly able, without the assistance of special counsel, to learn the defendant's wishes about a jury trial from the defendant himself. In this case, the colloquy between the trial court and defendant was doubtless helpful in enabling the patient trial court to evaluate whether defendant's request for a jury trial was in his best interests.
Although we do not rule out the propriety of appointing "wishes" counsel in an unusual case, such as one where trial counsel will be a witness (e.g. People v. Mickle, supra, 54 Cal.3d 140, 284 Cal.Rptr. 511, 814 P.2d 290), this was not such a case. "Wishes" counsel should not have been appointed.

DISPOSITION
The order is affirmed.
We concur: DAVIS, J. and MORRISON, J.
NOTES
[1] The order is appealable as a final judgment in a special proceeding. (Code Civ. Proc., § 904.1, subd. (a)(1); People v. Fields (1965) 62 Cal.2d 538, 542, 42 Cal.Rptr. 833, 399 P.2d 369.)
[2] Unless otherwise indicated further statutory references are to the Penal Code.
[3] We have chosen to adopt defendant's nomenclature for the two attorneys appointed to represent him at his competency proceeding. As defined by defendant in his brief, and used in this opinion, his "interests" attorney was the attorney appointed to represent defendant's best interests, even over his objection, and his "wishes" attorney was the attorney appointed to articulate defendant's desires to the court.
[4] The Supreme Court went on to observe that nothing in the record suggested that Mickle's refusal to waive the attorney-client privilege was the product of impaired judgment and, in any event, Mickle could demonstrate no prejudice. (People v. Mickle, supra, 54 Cal.3d at p. 184, 284 Cal.Rptr. 511, 814 P.2d 290.)