[No. B216207. Second Dist., Div. Six. Jan. 6, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL AVILA, Defendant and Appellant.

### COUNSEL

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Michael R. Johnsen, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

YEGAN, J.—A criminal defendant has a hard enough time defending the underlying charge. He should not "pick a new fight" with the prosecutor and yet another fight with his court-appointed counsel, i.e., he should not threaten to kill them thereby creating two new cases to defend. Here, appellant is charged with having done exactly that. He created two new felony cases against himself by threatening both the prosecutor and his own lawyer. These threats created, at the least, potential conflicts of interest which led the trial court to remove the district attorney (and appoint the Attorney General) and the public defender (and appoint new defense counsel). As we shall explain, removal of the public defender was within the trial court's discretion and was a safe and rational way to proceed.[1] The trial court was trying to protect appellant's right to conflict-free counsel and the irony is that it is now faulted for doing so.

---

[1] Had the trial court allowed the public defender to remain counsel of record and had there been an adverse judgment, appellate counsel would surely contend that reversal would be required because of the potential conflict. (See *In re Smith* (1970) 3 Cal.3d 192, 202–203 [90 Cal.Rptr. 1, 474 P.2d 969].)

Daniel Avila appeals from the trial court's orders, entered in three separate criminal cases after a single hearing, declaring him mentally incompetent to stand trial and committing him to the Metropolitan State Hospital. He contends the trial court deprived him of a fair hearing on the issue of his mental competence and interfered with his right to be represented by counsel of his choice. We affirm.

*Facts and Procedural History*

Three separate criminal cases are pending against appellant: *Case No. 2005002781:* In 2005, appellant was charged, inter alia, with one count of computer fraud (Pen. Code, § 502, subd. (c)(1))[2] and one count of identity theft (§ 530.5, subd. (a)). The prosecution alleged that, during his November 2004 campaign for a seat on the Thousand Oaks City Council, appellant generated harassing text messages that were made to look as if they had been sent by a rival candidate. Appellant lost the election and so did the rival candidate.

Appellant elected to represent himself. While in custody, appellant used telephone calls to his mother and his court-appointed investigator to make "three-way" calls to third persons. This practice violates jail regulations. Appellant was ordered by the trial court to stop making three-way calls. He ignored the court's order. Appellant used the three-way call device to telephone an attorney in the county counsel's office for Ventura County. He called an assistant district attorney at the attorney's home. Appellant also used the three-way calling scheme to telephone the office of an assistant attorney general.

On July 21, 2008, the prosecutor brought this misconduct to the attention of the trial court, requesting that the court determine whether appellant was competent within the meaning of *Indiana v. Edwards* (2008) 554 U.S. 164 [171 L.Ed.2d 345, 128 S.Ct. 2379]. The trial court appointed two psychologists to evaluate appellant. It also agreed to consider a psychological evaluation of appellant that had been prepared at an earlier stage of the proceedings.

At an evidentiary hearing in September 2008, a clinical psychologist who had examined appellant testified that he suffers from a severe mental illness marked by "grandiose expansiveness, hostile belligerence, and . . . paranoid projections." Although she acknowledged that appellant is very intelligent, she opined that his mental illness would preclude him from "being able to rationally assist an attorney in his own defense." She described appellant as an individual who is not "able to recognize or appreciate limits to his ability to be his own [worst] enemy."

---

[2] All further statutory references are to the Penal Code unless otherwise stated.

At the conclusion of the hearing, the trial court terminated appellant's right of self-representation. It found that, "because of your willful misconduct in violating the Court's order on three-way phone calls, the fact that you would not abide by any court order that would be entered that would order you not to continue doing that kind of thing, that the effect of your misconduct there goes to the core integrity of the trial process, all of which is colored by your ongoing mental health issues that self-representation rights are appropriately terminated in the case and the public defender is appointed at this time."

*Case No. 2008030495*: On July 23, 2008, two days after the prosecutor in case No. 2005002781 requested that appellant's right of self-representation be terminated, appellant made a telephone call from the Ventura County jail to his mother. The call was recorded by jail authorities. Appellant began by stating that the conversation was subject to the attorney-client privilege because he was acting as "the attorney of record" and was communicating with a third person "to further the interest of the defense in an agent capacity." Appellant said he was going to "test" the privilege by making this statement: "Umm, if [the prosecuting attorney] Marc Leventhal, Marc S. Leventhal, who should be within the encapsulated tunnel right now, if Marc S. Leventhal, umm, umm, in my substantive capacity I am saying, shielded by my remedial capacity, umm, who has the protection of Evidence Code 965.5, if Marc Leventhal keeps harassing my mother and keeps subpoenaing her, when I get out, I will, key word, will, I will attempt to murder him at his house, and I do know where he lives. Okay so let's see if that goes—I'm just testing system. I will murder him. This is a threat with the specific intent that it be taken as such, in my substantive capacity shielded by my remedial capacity. Alright, Mom, are you there?"

On July 25, 2008, two days after this telephone call, appellant was charged in a separate felony complaint with making a criminal threat and with threatening a prosecutor. (§§ 422, 76, subd. (a).) That same day, the public defender was appointed to represent him. The trial court removed the district attorney as prosecutor and the Attorney General took over the prosecution.

*Case No. 2008052740*: On December 15, 2008, a letter addressed to appellant's public defender was retrieved from the door of his cell at the Ventura County Jail. On the envelope, in addition to the intended recipient's address, appellant had written, "Death Threat, Via U.S. Mail, Title 18 U.S.C. Crime." He also wrote on the outside of the envelope that, if he was not sent to a "trial judge" by a certain date, "when I get out, I 'will find you' and I 'will murder you' with a shotgun at point-blank." Appellant wrote that it was his "specific intent" that the letter be taken as a death threat. He wanted to "convey the gravity of purpose to 'motivate' the system to uphold my 'speedy trial' right . . . . This time I am 'not' joking, I am serious!!! Merry Christmas."

Three days later, on December 18, 2008, appellant was charged in a separate criminal case with two additional felonies: attempted criminal threat against the public defender (§§ 664, 422), and threatening her (§ 76, subd. (a)). The trial court found a potential conflict of interest with the public defender and appointed new counsel to represent appellant (hereafter conflict counsel.) Conflict counsel declared a doubt as to appellant's mental competency. The trial court suspended proceedings and appointed mental health professionals to examine appellant.

## Section 1368 Hearing

At the section 1368 hearing, the public defender who represented appellant in the first two cases informed the trial court that she had no doubt concerning his mental competency and would advocate against a finding of incompetency.[3] Conflict counsel expressed a contrary view based on the psychologists' findings. The trial court ordered that a single competency hearing would be held for all three pending cases and that, for purposes of the hearing, conflict counsel would represent appellant. Over appellant's objections, conflict counsel waived jury and submitted the issue on the psychologists' reports. The trial court found appellant incompetent to stand trial, suspended proceedings in all three cases, and ordered appellant committed to Metropolitan State Hospital.

## Single Competency Hearing

Appellant contends the trial court erred when it held a single competency hearing for three separate cases and when it appointed the conflict counsel, rather than the public defender, to represent him at that hearing. He contends the orders deprived him of the counsel of his choice and of a fair hearing. We are not persuaded.

■    The trial court did not err by conducting a single mental competency hearing applicable to all three of the cases pending against appellant. This innovative procedure is not prohibited by statute. But the trial court has inherent supervisory and administrative powers that allow it to create new procedures in the absence of a statutory direction as long as such procedures are suitable and within the spirit of the code. (*James H. v. Superior Court* (1978) 77 Cal.App.3d 169, 175 [143 Cal.Rptr. 398]; see also *Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805, 812–813 [31 Cal.Rptr. 316, 382 P.2d 356].) The single mental competency hearing ordered here avoided

---

[3] The fact that the public defender would have opposed a finding of incompetency is irrelevant. A theoretically opposite tactic would be equally irrelevant. As we shall explain, her status as a crime victim triggered the trial court's inquiry and ultimate ruling.

redundant litigation, the theoretical possibility of conflicting trial court rulings, unnecessary delay, and duplicative costs while preserving appellant's right to have the question of his mental competency decided based on the evidence and the law. It is a suitable procedure within the spirit of the code.

### Removal of the Public Defender

The trial court did not err when it appointed conflict counsel to represent appellant at the competency hearing. The trial court correctly observed appellant's death threat against his public defender created a potential conflict of interest requiring the appointment of new counsel. Whether or not the public defender's bravery was real or feigned is beside the point. She was and is an alleged crime victim, lawfully designated as such by the prosecutor.[4] When conflict counsel declared a doubt concerning appellant's mental competency, the trial court conducted a hearing on that issue. Allowing conflict counsel, rather than the public defender, to represent appellant at that hearing did not violate his right to representation by the counsel of his choice or to a fair hearing. The trial court's ruling guaranteed appellant representation by an attorney with no actual or potential conflict of interest.

A mentally incompetent defendant may not be tried or convicted. (*People v. Ramos* (2004) 34 Cal.4th 494, 507 [21 Cal.Rptr.3d 575, 101 P.3d 478].) To be competent, the defendant must have the present ability to consult with his lawyer " ' " 'with a reasonable degree of rational understanding' " ' " and both a rational and factual understanding of the proceedings against him. (*Ibid.*, quoting *People v. Welch* (1999) 20 Cal.4th 701, 737 [85 Cal.Rptr.2d 203, 976 P.2d 754], quoting *Dusky v. United States* (1960) 362 U.S. 402 [4 L.Ed.2d 824, 80 S.Ct. 788].) The defendant has a right to be represented by counsel at a mental competency trial. Neither the state nor the federal Constitution, however, allows the defendant to insist upon representation by a specific court-appointed attorney or by an attorney who has an actual or potential conflict of interest. (*People v. Jones* (2004) 33 Cal.4th 234, 244 [14 Cal.Rptr.3d 579, 91 P.3d 939].) Moreover, once appointed, counsel is responsible for making tactical decisions concerning the defense that will be presented at trial. (*People v. Carpenter* (1997) 15 Cal.4th 312, 376 [63 Cal.Rptr.2d 1, 935 P.2d 708].) A defendant "does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense." (*People v. Welch* (1999) 20 Cal.4th 701, 728 [85 Cal.Rptr.2d 203, 976 P.2d 754].) Where the defendant's mental competency is at issue, counsel is required to " 'advocate the position counsel perceives to

---

[4] At oral argument, appellant argued that the prosecutor could use his statutory charging power to remove conscientious and vigorous defense counsel in favor of a less aggressive attorney. We presume, and the record shows, that the filing of the new case was not so motivated.

be in the client's best interests even when that interest conflicts with the client's stated position.' (*Shephard* v. *Superior Court* (1986) 180 Cal.App.3d 23, 28 [225 Cal.Rptr. 328]; see also *People* v. *Hill* (1967) 67 Cal.2d 105, 115, fn. 4 [60 Cal.Rptr. 234, 429 P.2d 586].) Thus, when counsel believes his client may be incompetent, and the trial court, pursuant to section 1368, has declared a doubt of defendant's competence, defendant is not deprived of effective assistance if defense counsel overrides defendant's desire to present only evidence and argument of competence." (*People v. Stanley* (1995) 10 Cal.4th 764, 804–805 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

■ Appellant contends the trial court deprived him of the counsel of his choice by appointing conflict counsel, rather than the public defender, to represent him in the competency proceeding. There was no error. First, as indicated, a defendant has no right to any particular court-appointed attorney of his choice. (*People v. Jones, supra*, 33 Cal.4th 234, 244.) Second, conflict counsel was appointed because appellant threatened to kill his public defender. The trial court did not err when it concluded that the death threat created a potential or actual conflict of interest necessitating the removal of the threatened public defender. (*People v. Roldan* (2005) 35 Cal.4th 646, 675 [27 Cal.Rptr.3d 360, 110 P.3d 289], disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11].)

■ As the court noted in *Roldan*, "[A]lthough defendant unquestionably was entitled to the effective assistance of a conflict-free attorney, defendant's own behavior created the alleged conflict and threatened to undermine his lawyer's effectiveness. We are reluctant to recognize a rule of law that would empower criminal defendants to inject reversible error into their trials by simply threatening their lawyers." (*People v. Roldan, supra*, 35 Cal.4th at p. 674.) Like the court in *Roldan*, we are reluctant to provide appellant with a roadmap for creating endless delay by the simple expedient of threatening his attorney's life. At the same time, our adversarial system cannot function properly where defense counsel harbors divided loyalties. In these circumstances, we rely on the trial court's discretion "to determine whether a criminal defendant is represented by an attorney truly laboring under conflicting interests or whether the defendant his simply engineered an apparent conflict in an attempt to delay the ultimate moment of truth, the jury's verdict." (*Id.* at p. 675.) This does not appear to be a sham threat made with the intent to disrupt or delay the proceedings. Here, there was a credible death threat resulting in the filing of new criminal charges against appellant. The public defender is both the named victim and a necessary witness at any trial on those charges. The trial court properly concluded that the removal of

the public defender and the appointment of conflict counsel was an appropriate way to proceed.

Nor was the trial court required to consider any attempted waiver of the conflict to permit appellant's continued representation by the counsel of his choice. We doubt that a conflict based on a credible death threat can be waived by the defendant. In any event, the trial court's order appointing new counsel, albeit over appellant's objection, was made to protect his right to competent and conflict-free counsel. "In such circumstances, there is no violation of the right to counsel guaranteed by article I, section 15 of the state Constitution, notwithstanding the defendant's willingness to waive the potential conflict." (*People v. Jones, supra*, 33 Cal.4th at pp. 244–245; see also *People v. Welch, supra*, 20 Cal.4th 701, 728–729; *People v. Bonin* (1989) 47 Cal.3d 808, 836–837 [254 Cal.Rptr. 298, 765 P.2d 460].)

Finally, the public defender's conflict of interest in case No. 2008052740 (regarding the threats made by appellant against her), cannot be viewed in isolation. The conflict applies to all of the cases pending against appellant because defense counsel's ability to fully defend appellant in any matter is compromised if counsel believes appellant might make good on his threat. To avoid that conflict and safeguard appellant's right to counsel, the trial court properly appointed conflict counsel to represent appellant in the competency proceeding. Its order appointing conflict counsel was a safe and rational way to proceed. The trial court had seen and heard appellant representing himself in the original case. Only three months earlier, it heard expert testimony that appellant suffered from a severe mental illness that precluded him from "being able to rationally assist an attorney in his own defense." The trial court could rely on that testimony in appointing conflict counsel, rather than permitting appellant and the public defender to seek a waiver of the conflict. (*People v. Bonin, supra*, 47 Cal.3d at p. 837.)

At oral argument, appellant's attorney indicated that were we to agree with the trial court, such a ruling could be misused by a defendant seeking to jettison appointed counsel after losing a *Marsden* motion. (*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] [Criminal defendant entitled to competent representation and the trial court must listen to defendants reason or reasons for request to discharge present counsel and appoint new counsel.].) This seems farfetched. We doubt that a defendant would commit a new crime and risk a new prosecution just to have counsel relieved in the former case. This would be the acme of foolishness. And even if this is the case in the future, the possibility or probability of a consecutive sentence for the new threat should be a sufficient deterrent.

## *Conclusion*

The judgments (orders of incompetency and commitments to Metropolitan State Hospital) are affirmed.

Gilbert, P. J., and Perren, J., concurred.